351 So.2d 1333 (1977)
Nolan CLARK et al.
v.
Willie Mae CARTER et al.
No. 49639.
Supreme Court of Mississippi.
November 2, 1977.
Rehearing Denied November 30, 1977.
Riddell & Dabbs, Tally D. Riddell, Quitman, Heidelberg, Woodliff & Franks, Luther M. Thompson, Brunini, Grantham, Grower & Hewes, John M. Grower, Jackson, for appellants.
Bacon & Smith, L.O. Smith, Jr., Gerald, Brand, Watters, Cox & Hemleben, Martha W. Gerald, Jack W. Brand, Scott P. Hemleben, Jackson, Hugh Craig Forshner, New Orleans, La., John M. Sims, Heidelberg, Robert H. McFarland, Bay Springs, for appellees.
Before SMITH, BROOM and LEE, JJ.
LEE, Justice, for the Court:
Nolan Clark, et al., have appealed from an order of the Chancery Court of the First Judicial District of Jasper County, Mississippi, holding that an instrument designated "Mineral Right and Royalty Transfer" is a royalty transfer rather than a mineral deed.
The sole question involved is whether or not the instrument is a mineral deed or a royalty transfer. Numerous parties, including oil companies, were involved in the litigation. The oil companies obtained leases from all parties, and their interest in the *1334 case is to have the owners of the minerals and royalty determined in order to make proper disbursement of oil royalties. The case was tried on stipulations, exhibits and pleadings. The chancellor overruled demurrers and construed the instrument to be a conveyance of royalty rather than minerals.
The instrument involved is a Form R-101 "Mineral Right and Royalty Transfer," [See Appendix] which has been used in Mississippi for a number of years. It is a printed form with blank spaces to be filed in, including a space for the description of the property. After the description, the following words were typed in the instrument:
"It is the intention of the grantors to convey by this instrument to the grantee, a transfer of all royalty owned by us to all minerals in, on, or under all land owned by us in Jasper County, Mississippi."
The instrument was executed by Will Carter and Dollie Carter to W.T. Rowell, grantee, was witnessed by Mrs. Leroy Wells and Carter I. Arledge, and was acknowledged by Mrs. Grace B. Arledge, notary public. The date of the instrument is June 26, 1944. On the same date, an oil, gas and mineral lease was executed by Will Carter and Dollie Carter to W.T. Rowell, lessee. It was also witnessed by Mrs. Leroy Wells and Carter I. Arledge, and acknowledged by Mrs. Grace B. Arledge. The inference is that the instruments were executed contemporaneously. They were recorded on July 14, 1944, the oil, gas and mineral lease being recorded four (4) minutes prior to the R-101 instrument, which indicates that they were received in the chancery clerk's office simultaneously.
It is significant that Will Carter and Dollie Carter were Negroes, that Dollie Carter could neither read, write nor sign her name, and that Will Carter could not read or write, although he could sign his name. Obviously, they could not have prepared the instrument, and, therefore, the inference and presumption are strong that both instruments were prepared by the grantee, W.T. Rowell, and that the intention phrase set forth above was written into the R-101 instrument by Rowell.
Appellants rely upon the case of Ford v. Jones, 226 Miss. 716, 85 So.2d 215 (1956). In that case, Jones conveyed to Ford by Form R-101 an undivided one-fourth (1/4) of the minerals in certain lands. After the description the following words were written:
"It is the intention of grantors, by this instrument, to convey, and the intention of grantee to purchase an undivided ten (10) royalty acres under the above described lands.
It is understood and agreed that this land is now subject to an outstanding oil, gas and mineral lease and grantee waives the right to receive any part of the delayed drilling rentals provided in said lease." 226 Miss. at 718-719, 85 So.2d at 216.
The chancery court held the instrument to be a royalty conveyance, but this Court construed it to be a conveyance of the minerals, stating that the provisions written after the description were not inconsistent with the printed provisions of the instrument. The Court said:
"The two intention clauses or sentences written into the instrument are entirely consistent with the foregoing provisions. The first recites that it is the intention of grantors and grantee to convey `ten royalty acres.' Of course a deed to minerals in place carries along with it the royalty rights in the land, unless expressly excepted. Furthermore, the second intention sentence recites that the land is subject to an existing mineral lease, and that `grantee waives the right to receive any part of the delayed drilling rentals as provided in said lease.' This provision would have been useless if the deed conveyed only a royalty interest. The grantee could waive rentals under an existing lease only if the nature of the deed in fact conveyed to him the rentals unless an exception of them was made. Moreover, the latter part of the instrument conveys expressly to the grantee the rentals under future leases." 226 Miss. at 720-721, 85 So.2d at 217.
*1335 We distinguish Ford from the present case. In Ford there was no lease executed contemporaneously with the transfer instrument. Here, the oil, gas and mineral lease is pertinent to the intention of the parties. In Ford the circumstances surrounding the grantors and information as to who prepared the instrument are not indicated, while here, it is undisputed that the grantors were illiterate and unlearned and could not have prepared it. If the present R-101 instrument was intended to be a conveyance of minerals, the intent provision typed therein would become useless because the grantee would own all royalty by reason of owning the minerals. Furthermore, there would have been no reason to obtain and record the oil, gas and mineral lease since a mineral conveyance would vest the executive rights in Rowell.
In discussing the rules for construction of deeds or contracts, this Court said in Sumter Lumber Co. v. Skipper, 183 Miss. 595, 184 So. 296 (1938):
"The rules for the construction of deeds or contracts are designed to ascertain and follow the actual or probable intention of the parties, and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments thereinabout which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words." 183 Miss. at 608-609, 184 So. at 298-299.
See also Richardson v. Moore, 198 Miss. 741, 22 So.2d 494 (1945).
In Shepard v. John Hancock Mutual Life Ins. Co., 189 Kan. 125, 368 P.2d 19 (1962), the Supreme Court of Kansas was confronted with the problem of whether or not a certain instrument should be construed to be a royalty transfer or a mineral deed. The Court held that a contemporaneously executed mortgage may be considered for its evidentiary value in determining the intent of the parties and said:
"The clarity of the intent of the parties that the defendant reserved an interest in minerals in place is enhanced by the recital in the mortgage executed by the plaintiffs on March 29, 1943. It is well settled that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective interests of the parties, although they do not in terms refer to each other (MacLorinan v. Finley, 124 Kan. 637, 640, 261 P. 587; Skinner v. Skinner, 126 Kan. 601, 270 P. 594; Steele v. Nelson, 139 Kan. 559, 32 P.2d 253; Setchell v. Reed, 153 Kan. 818, 820, 113 P.2d 1050; 17 C.J.S. Contracts § 298, p. 714). While the special warranty deed was executed and delivered to plaintiffs on July 1, 1942, it was not recorded until April 28, 1943, the date the mortgage was recorded, and under the foregoing rule, the recital in the mortgage which defined the interest reserved by the defendant as an `undivided one-fourth nonparticipating mineral interest,' may be considered for its evidentiary value in determining the intention of the parties." 189 Kan. at 134, 368 P.2d at 26.
*1336 See also Doe v. Bernard, 15 Miss. (7 Sm. & M.) 319 (1846).
Although the terms of a contract generally are construed more strongly against the grantor or maker when they are vague and ambiguous, it is also an established principle of law that such terms are construed more strongly against the party preparing the instrument. In 2 Summers, Oil & Gas § 372, at 487-491 (1959), the rule is stated as follows:
"Another commonly applied rule of construction of written instruments, which is not peculiar to oil and gas leases, is that where there is uncertainty or ambiguity as to the intent or meaning of the writing it will be construed against the party preparing the instrument."
In Stampley v. Gilbert, 332 So.2d 61 (Miss. 1976), this Court stated:
"There is also the universal rule of construction that when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it." 332 So.2d at 63.
See also Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Love Petroleum Co. v. Atlantic Oil Producing Co., 169 Miss. 259, 152 So. 829 (1934); Home Mutual Fire Ins. Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916).
We have carefully considered the entire record, the conditions surrounding the parties at the time of the execution of the instrument, and the particular situation of the parties. We conclude that it was the intent of the parties that the R-101 instrument convey royalty interest and not mineral interest and that the Carters retained the mineral rights together with the right to execute oil, gas and mineral leases.
The judgment of the lower court, therefore, must be and is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER, SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.

APPENDIX
 MINERAL RIGHT AND ROYALTY TRANSFER
 (To An Undivided Interest)
STATE OF MISSISSIPPI, COUNTY OF JASPER 
KNOW ALL MEN BY THESE PRESENTS: That Will Carter and wife Dolly Carter, of Vosburg, Jasper County, State of Mississippi, hereinafter called grantor (whether one or more and referred to in the singular number and masculine gender), for and in consideration of the sum of Ten and No/100  and other valuable considerations paid Dollars ($10.00) and other good and valuable considerations, paid by W.T. Rowell hereinafter called grantee, the receipt of which is hereby acknowledged, has granted, sold and conveyed and by these presents does grant, sell and convey unto said grantee an undivided entire ( all ) interest in and to all of the oil, gas and other minerals of every kind and character in, on or under that certain tract or parcel of land situated in the County of Jasper , State of Mississippi, and described as follows:
The SE-1/4 of the NE-1/4 and the NE-1/4 of the SE-1/4, less Railroad Rig4ht of Way, also one (1) acre sold to the Bell Telephone Company, all in Section 1, Township 1 North, Range 13 East, First Judicial District, Jasper County, Mississippi.
It is the intention of the Grantors to convey by this instrument to the Grantee, a transfer of all Royalty owned by us to all minerals in, on or under all land owned by us in Jasper County, Mississippi.
*1337 TO HAVE AND TO HOLD the said undivided interest in all of the said oil, gas and other minerals in, on and under said land, together with all and singular the rights and appurtenances thereto in any wise belonging, with the right of ingress and egress, and possession at all times for the purpose of mining, drilling and operating for said minerals and the maintenance of facilities and means necessary or convenient for producing, treating and transporting such minerals and for housing and boarding employees, unto said grantee, his heirs, successors and assigns, forever; and grantor herein for himself and his heirs, executors and administrators hereby agrees to warrant and forever defend all and singular the said interest in said minerals, unto the said grantee, his heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.
Grantee shall have the right at any time (but is not required) to redeem for Grantor by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of payment by Grantor, and be subrogated to the rights of the holder thereof.
This conveyance is made subject to any valid and subsisting oil, gas or other mineral lease or leases on said land, including also any mineral lease, if any, heretofore made or being contemporaneously made from grantor to grantees; but, for the same consideration hereinabove mentioned, grantor has sold, transferred, assigned and conveyed and by these presents does sell, transfer, assign and convey unto grantee, his heirs, successors and assigns, the same undivided interest (as the undivided interest hereinabove conveyed in the oil, gas and other minerals in said land) in all the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land; to have and to hold unto grantee, his heirs, successors and assigns.
WITNESS the signature ____ of the grantor s this 26th day of June , 19 44 .
Witnesses:
 Mrs. LeRoy Wells Will Carter
---------------------------- ----------------------------
Carter I. Arledge Dolly her x mark Carter
---------------------------- ----------------------------
===========================================================================
STATE OF MISSISSIPPI, COUNTY OF Jasper 
This day personally appeared before me, the undersigned authority in and for the above styled jurisdiction, the within named Will Carter and his wife, Dolly Carter who acknowledged that t he y signed and delivered the above and foregoing instrument on the day and year therein named as their free and voluntary act and deed.
Given under my hand and official seal, this the 26th day of June , A.D., 19 44 .
Notarial Seal Mrs. Grace B. Arledge, Notary Public
*1338 ===========================================================================
Filed for record at 8:35 o'clock A. M., this 26th day of June , A.D., 19 44 and recorded in Book No. 14 , Page 577 on 14th day of July . A.D., 19 44 .
 J.J. Denson Clerk
 ------------------------------
 /s/ Addie Rene Lightsey D.C.
 ------------------------------